# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROSAURA GENCHI GARCIA, | ) | Case No. |
| | ) | |
| Petitioner, | ) | |
| | ) | PETITION FOR WRIT OF HABEAS |
| vs. | ) | CORPUS |
| | ) | |
| GREG LONDON, Sarpy County Sheriff | ) | |
| JO MARTIN Sarpy County Jail Director | ) | |
| KRISTI NOEM, Secretary, United States | ) | |
| Department of Homeland Security, | ) | |
| PAMELA BONDI, Attorney General of the | ) | |
| United States, DAREN MARGOLIN, | ) | |
| Director, Executive Office for Immigration | ) | |
| Review, TODD LYONS, Acting Director, | ) | |
| Immigration and Customs Enforcement, | ) | |
| PETER BERG, Director, St. Paul ICE Field | ) | |
| Office; DEPARTMENT OF HOMELAND | ) | |
| SECURITY; EXECUTIVE OFFICE FOR | ) | |
| IMMIGRATION REVIEW; | ) | |
| IMMIGRATION AND CUSTOMS | ) | |
| ENFORCEMENT; OMAHA | ) | |
| IMMIGRATION COURT | ) | |
| | ) | |
| Respondents. | ) | |

## INTRODUCTION

1. Petitioner is a 41-year-old female, native and citizen of Mexico who has lived in the United States since 2004. After her arrest for a criminal case in Sarpy County she had been detained under an ICE hold for several months and is now detained by Immigration and Customs Enforcement ("ICE") pending the completion of her removal proceedings.

2. Petitioner requested a bond review hearing in the Omaha Immigration Court. However, the Immigration Judge denied Petitioner's request, concluding it had no jurisdiction to hold a bond hearing or release her from custody, citing a recent decision by the Board of Immigration Appeals ruling that all aliens who are present in the United States without inspection do not qualify for bond. *See Matter of Yajure-Hurtado*, 29 I&N Dec. 216 (BIA 2025).

3. Up until very recently people in the United States without legal status have been granted bond hearings pursuant to Section 236 of the Immigration and Nationality Act. However, due to the recent decision by the BIA, Immigration Judges have been stripped of their authority to grant bond hearings to individuals such as the Petitioner.

4. *Matter of Yajure-Hurtado*'s holding ignores decades of precedence and has been continuously rejected by numerous federals courts. The Immigration Judge's reliance on this incorrect decision violates Petitioner's statutory and due process rights.

5. Petitioner seeks habeas relief under 28 U.S.C. 2241, which is the proper vehicle for challenging her unlawful detention.

6. Petitioner respectfully requests that the Court find her detention unlawful and issue a preliminary injunction requiring EOIR to provide Petitioner with a bond hearing within seven days or in the alternative, order that Petitioner be released from custody.

### CUSTODY

7. Petitioner is currently in the custody of the Sarpy County Jail in Bellevue, Nebraska. She is in the physical custody and direct control of Respondents and their agents. Although Petitioner is in physical custody in Sarpy County, she is detained by Immigration and Customs Enforcement and has been in ICE custody since September 24, 2025.

### JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. 2241 and 28 U.S.C. 1331.

9. Venue is proper in this District under 28 U.S.C. 1391 and 28 U.S.C. 2242 because Petitioner is confined in this District, at least on Respondent is in this District, Petitioner's immediate physical custodian is in this District, and a substantial part of the events giving rise to the claims in this action occurred in this District.

### HABEAS CORPUS

10. A petitioner is entitled to habeas relief if she demonstrates that her detention violates the United States Constitution or federal law. 28 U.S.C. § 2241.

11. The Court must grant the petition for writ of habeas corpus or order Respondents to show cause 'forthwith," unless the petitioner is not entitle to relief. 28 U.S.C. § 2243. If an

order to show cause is issued, Respondents must file a return 'within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

12. The Court has inherent power to release the petitioner pending review of her petition. *See Martin v. Solem,* 801 F.2d 324, 329 (8th Cir. 1986).

## PARTIES

13. Respondent Greg London is the Sarpy County Sheriff and has physical and administrative custody over Petitioner. He is named in his official capacity.

14. Respondent Jo Martin is the Sarpy County Jail Director and has physical and administrative custody over Petitioner. She is named in her official capacity.

15. Respondent Kristi Noem is the Secretary of the United States Department of Homeland Security (DHS). She is a legal custodian of Petitioner and is named in her official capacity.

16. Respondent Pamela Jo Bondi is the Attorney General of the United States Department of Justice. She is a legal custodian of Petitioner and is named in her official capacity.

17. Respondent Daren Margolin is the Director of the Executive Office of Immigration Review (EOIR). He is a legal custodian of Petitioner and is named is his official capacity.

18. Respondent Todd M. Lyons is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

19. Respondent Peter Berg is the Director of the ICE St. Paul Field Office. He is a legal custodian of Petitioner and is named in his official capacity.

20. Respondent Department of Homeland Security is a legal custodian of Petitioner.

21. Respondent Immigration and Customs Enforcement is a legal custodian of Petitioner.

22. Respondent Executive Office for Immigration Review is a legal custodian of Petitioner.

23. Respondent Omaha Immigration Court is a legal custodian of Petitioner.

## FACTUAL ALLEGATIONS

### A. Background

24. Petitioner is native and citizen of Mexico who has resided in the United States since 2003. She is the mother of 3 United States Citizen children and was responsible for providing financial and emotional support to them.

25. On June 4, 2025, Petitioner was arrested by the Sarpy County Sheriff for pending criminal charges in Sarpy County Nebraska. Petitioner was taken into custody at the Sarpy County Jail.

26. Petitioner was given a bond by the Sarpy County Court, however due to having no legal status ICE placed a detainer on her and she was forced to stay in custody until the conclusion of her criminal proceedings.

## B. Detention and Bond Hearing

27. At the conclusion of Petitioner's criminal proceedings, she was transferred to the custody of ICE where she was held without bond.

28. At Petitioner's first master calendar hearing, she requested a bond redetermination hearing due to her very limited criminal history and very small flight risk given her family ties and long duration in the United States.

29. At the bond redetermination request hearing, the IJ heard evidence and arguments from Petitioner and DHS. Given Petitioner's manner of entry into the United States and the recent decision from the Board of Immigration Appeals, the arguments were based on whether the IJ had jurisdiction to consider bond in Petitioner's case.

30. Petitioner argued that the BIA's recent decision *Matter of Yajure-Hurtado* 29 I&N Dec. 216 (BIA 2025) was decided incorrectly and the IJ had jurisdiction to grant Petitioner bond under 8 U.S.C. §1226(a). DHS argued that Petitioner was considered and "applicant for admission" and subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), relying on the decision in Yajure-Hurtado.

31. At Petitioner's bond redetermination request hearing, the IJ determined that he was required to follow *Yajure-Hurtado* and denied Petitioner's request for bond due to not having jurisdiction to grant bond in her case.

32. Prior to *Yajure-Hurtado*, the IJ had been rejecting DHS's argument that individuals who entered without inspection are subject to mandatory detention based on decades of precedent and had granted bond to numerous individuals with similar situations to Petitioner's.

33. However, because of the IJ's requirement to follow *Yajure-Hurtado*, Petitioner now remains in custody despite Respondent not being a danger to her community or an excessive flight risk.

## LEGAL FRAMEWORK

34. The Due Process Clause of the Fifth Amendment guarantees that no person in the United States shall be deprived of liberty without due process. U.S. Const. amend. V. These substantive and procedural due process protections apply to all people, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Shaughnessy v. United States ex rel. Mezei* 345 U.S. 206, 212 (1953) ("Aliens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law").

35. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 678.

36. The Supreme Court, thus, "has repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington v. Texas*, 441 U.S. 418, 425 (1979) (collecting cases); see also *Salerno*, 481 U.S. at 755 (requiring individualized hearing and strong procedural protections for detention of people charged with federal crimes); *Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992) (same for civil commitment for mental illness); *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (same for commitment of sex offenders).

37. For decades, the immigration system has implemented this balance through a network of three mutually exclusive detention statutes.

38. First, at the border, individuals "seeking admission" who are placed into removal proceedings are subject to detention without a bond hearing under 8 U.S.C. § 1225(b)(2).1 See *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (describing § 1225 as relating to "borders and ports of entry"). These individuals may request release through humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).

39. Second, individuals arrested inside the United States are generally placed into removal proceedings under 8 U.S.C. § 1229a, during which an Immigration Judge (an "IJ")—and later potentially the Board of Immigration Appeals (the "BIA") and a U.S. Court of Appeals—will decide whether or not the person should be deported. During these proceedings, a noncitizen may apply for various forms of relief from deportation, such as asylum, withholding of removal, cancellation of removal, and adjustment of status. The IJ usually holds a series of hearings to determine if the person is eligible for deportation and, even if so, whether to grant some form of relief from deportation. This process can take months or even years. While this process is ongoing, the individuals are generally subject to the detention authority of 8 U.S.C. § 1226. See *Jennings*, 583 U.S. at 288-89 (describing § 1226 detention as relating to people "inside the United States" and "present in the country"). Most of these individuals are eligible for release on bond and conditions under § 1226(a), and they are consequently entitled to a custody redetermination (colloquially called a "bond hearing") before an IJ to decide whether they should be detained or released. See 8 C.F.R. §§ 1003.19(a), 1236.1(d). A bond hearing with strong procedural protections is not mere regulatory grace; it is the baseline Due Process requirement for § 1226 detainees. The Supreme Court and First Circuit have recognized only one exception to this constitutional requirement for a bond hearing for § 1226 detainees: In 2003, in Demore v. Kim, the Court held that, under 8 U.S.C. § 1226(c), there is a narrow category of people who can be held in mandatory detention for a brief period of time, if the person has conceded removability and has been convicted of certain crimes following all of the due process afforded by a criminal adjudication.2 See 538 U.S. 510, 513 (2003).

40. Third, if an individual completes their removal proceedings and all appeals, and is ordered removed, the person is subject to detention under 8 U.S.C. § 1231 while the government attempts to remove them. That statute provides for 90 days of mandatory detention called the "removal period," followed by discretionary detention within certain limits. See *Zadvydas*, 533 U.S. at 699- 700 (holding § 1231 detention may not continue if removal is not reasonably foreseeable).

41. This system—in which people arrested inside the United States are generally eligible for a bond hearing and release during immigration proceedings—has existed essentially in its

current form since Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub. L. No. 104-208, Div. C, § 3003, 110 Stat. 3009-546, 3009-585 to 3009-587 (codified at 8 U.S.C. § 1226). According to IIRIRA's legislative history, § 1226(a) was intended to "restate[] the [then-]current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." See Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1260 (W.D. Wash. 2025) (quoting H.R. Rep. No. 104-469, at 229 (1996)). It also reflected nearly a century of law in the United States of allowing people inside the country to seek release while the government decided whether or not to deport them. See 34 Stat. 904-05, § 20 (1907) (providing for release on bond for noncitizens alleged to have entered the United States unlawfully); 39 Stat. 874, 890-91, §§ 19, 20 (1917) (similar); 66 Stat. 163, §§ 241(a)(2), 242(a) (1952) (last codified at 8 U.S.C. § 1252(a)(1) (1994)) (providing for release on bond, including for noncitizens alleged to have entered the United States without inspection).

42. This eligibility for a bond hearing and potential release has applied to people arrested in the United States, regardless of whether they initially entered the country with permission. Indeed, shortly after IIRIRA's enactment, the former Immigration and Naturalization Service and the Case 1:25-cv-12664-PBS Document 10 Filed 09/22/25 Page 6 of 19 7 Executive Office for Immigration Review ("EOIR," which houses the Immigration Courts and BIA) issued an interim rule to implement the statute that expressly stated: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

43. Thus, for almost 30 years, all participants in the immigration system have understood that people arrested inside the United States generally fall within § 1226 for detention purposes and are therefore required to receive a bond hearing upon request—even if they initially entered the country without permission.

44. However, around late 2022, the Immigration Court in Tacoma, Washington began misclassifying § 1226 detainees arrested inside the United States as mandatory detainees under § 1225(b)(2), solely because they initially entered the country without permission.

See *Rodriguez*, 779 F. Supp. 3d at 1244. The U.S. District Court for the Western District of Washington ruled that this practice was likely illegal in April 2025 and ordered a bond hearing for a wrongfully detained litigant. See id. at 1263.

45. Nevertheless, three months later, on July 8, 2025, DHS, "in coordination" with DOJ, adopted the Tacoma Immigration Court's unlawful practice nationwide.3 Pursuant to the July 2025 3 See Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applicationsfor-admission. Case 1:25-cv-12664-PBS Document 10 Filed 09/22/25 Page 7 of 19 8 Policy, DHS's representatives in the Immigration Courts began to request that Immigration Judges nationwide misclassify bond-eligible § 1226 detainees as mandatory § 1225(b)(2) detainees and refuse to conduct bond hearings on that basis. Some Immigration Judges agreed. As a result, numerous detainees were illegally denied bond hearings and sought relief in the federal courts. Numerous courts—including several in the District of Nebraska and the Eight Circuit—rejected DHS's newly invented misclassification as illegal and ordered the detainees to receive a prompt bond hearing. *See Anicasion v. Kramer*, 2025 WL 2374224 (D. Neb. Aug 14, 2025); *Garcia Jimenez v. Kramer*, 2025 WL 2374223 (D. Neb. Aug 14, 2025); *Maldonado v. Olson*, 2025 WL 2374411 (D. Minn. Aug 15, 2025); *Jacinto v. Trump*, 2025 WL 2402271 (D. Neb. August 19, 2025); *Palma Perez v. Berg*, 2025 WL 2531566 (D. Neb. Sept 3, 2025).

46. As previously noted, the BIA and the Immigration Courts are entities within EOIR, which is part of DOJ. On September 5, 2025, in *Matter of Yajure Hurtado*, 29 I. &. N. Dec. 216 (B.I.A. 2025) ("Matter of Hurtado"), the BIA issued a precedential decision that purports to require all Immigration Judges to misclassify people in this manner. Although the Matter of Hurtado decision is just two weeks old, multiple federal courts have already ruled that the BIA's decision is not entitled to any deference under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412-13 (2024), and have rejected the BIA's decision as contrary to law. See, e.g., *Chogllo Chafla v. Scott*, No. 25-437, 2025 WL 2688541, at *7 (D. Me. Sept. 21, 2025) ("I find Yajure Hurtado to be unavailing . . . ."); Order (D.E. 22), *Hilario Rodriguez*, No. 25-12358, at 4 n.4; *Sampiao*, No. 25-11981, 2025 WL 2607924, at *8 n.11 ("[T]he Court disagrees with the BIA for the reasons given herein."); *Pizarro Reyes*, 2025 WL 2609425, at *7 ("[T]he BIA's decision to pivot from three decades of

consistent statutory interpretation and call for [petitioner's] detention under § 1225(b)(2)(A) is at odds with every District Court that has been confronted with the same question of statutory interpretation.");

47. Nevertheless, DHS and DOJ are continuing to systemically misclassify people and unlawfully deny them access to bond hearings and release on bond and conditions during the pendency of their immigration proceedings.

## CAUSES OF ACTIONS

### FIRST CAUSE OF ACTION
### Violation of 8 U.S.C. § 1226(a) and Associated Regulations

48. Petitioner may be detained, if at all, pursuant to 8 U.S.C. § 1226(a).

49. Under § 1226(a) and its associated regulations, Petitioner is entitled to a bond hearing. See 8 C.F.R. §§ 236.1(d), 1236.1, 1003.19(a)-(f).

50. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

51. Petitioner's continuing detention is therefore unlawful.

### SECOND CAUSE OF ACTION

### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide Bond Hearing Under 8 U.S.C. § 1226(a))

52. Because Petitioner is subject to detention, if at all, under 8 U.S.C. § 1226(a), the Due Process Clause of the Fifth Amendment to the United States Constitution requires that they receive a bond hearing with strong procedural protections. See *Hernandez-Lara*, 10 F.4th at 41; Doe, 11 F.4th at 2; Brito, 22 F.4th at 256-57.

53. Petitioner has not been, and will not be, provided with a bond hearing as required by law.

54. Petitioner's continuing detention is therefore unlawful.

### THIRD CAUSE OF ACTION

### Violation of Fifth Amendment Right to Due Process
### (Failure to Provide an Individualized Hearing for Domestic Civil Detention)

55. The Fifth Amendment's Due Process Clause specifically forbids the Government to "deprive[]" any "person . . . of . . . liberty . . . without due process of law." U.S. Const. amend. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; cf. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020) (holding noncitizens' due process rights were limited where the person was not residing in the United States, but rather had been arrested 25 yards into U.S. territory, apparently moments after he crossed the border while he was still "on the threshold").

56. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause. *Zadvydas*, 533 U.S. 678 at (2001).

57. The Supreme Court, thus, "has repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," including an individualized detention hearing. *Addington*, 441 U.S. at 425; see also *Salerno*, 481 U.S. at 755; *Foucha*, 504 U.S. at 81-83; *Hendricks*, 521 U.S. at 357.

58. Petitioner will be held without being provided any individualized detention hearing.

59. Petitioner's continuing detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## FOURTH CAUSE OF ACTION

### Violation of Fifth Amendment Right to Due Process
### (Substantive Due Process)

60. Because Petitioner is not being provided a bond hearing, the government is not taking any steps to effectuate its substantive obligation to ensure that immigration detention bears a "reasonable relation" to the purposes of immigration detention (i.e., Case 1:25-cv-12664-PBS Document 10 Filed 09/22/25 Page 15 of 19 16 the prevention of flight and danger to the community during the pendency of removal proceedings) and is not impermissibly punitive. See *Zadvydas*, 533 U.S. at 690; Demore, 538 U.S. at 532-33 (Kennedy, J., concurring).

61. Petitioner's detention is therefore unlawful, regardless of what statute might apply to purportedly authorize such detention.

## FIFTH CAUSE OF ACTION

### Violation of Administrative Procedure Act (5 U.S.C. § 706)

62. Petitioner is being detained without a bond hearing pursuant to the BIA's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).
63. The BIA's decision in *Matter of Hurtado* is unlawful because it violates the Administrative Procedure Act, including because the BIA's decision is arbitrary, capricious, and contrary to law.
64. Petitioner's detention is therefore unlawful.

## PRAYER FOR RELIEF

Petitioner Rosaura Genchi-Garcia respectfully requests this Curt grant the following:

1. Assume Jurisdiction over this matter;
2. Declare that Petitioner's detention is unlawful;
3. Declare that Petitioner is detained pursuant to 8 U.S.C. § 1226 and is therefore entitled to a bond hearing upon request;
4. Issue a preliminary injunction and Writ of Habeas Corpus ordering Respondents to release Petitioner immediately, or, in the alternative, order Respondents to release Petitioner if she is not provided a bond hearing within seven (7) days after the Court's order;
5. Grant any further relief this Court deems just and proper.

Respectfully Submitted,

/s/Daniel A. Rivas
Daniel A. Rivas #27919
Jason Finch and Associates PC LLO
212 S. 74th St. Suite 100
Omaha, Nebraska 68114
402-384-2464
drivas@jasonfinchlaw.com
Attorney for Petitioner

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document will be served on counsel for all parties through the Court's CM/ECF system. Date: October 21, 2025

/s/ Daniel A. Rivas_____
Attorney for Petitioner




EXHIBIT

1

## UNITED STATES DEPARTMENT OF JUSTICE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
## OMAHA IMMIGRATION COURT

Respondent Name:

    GENCHI-GARCIA, ROSAURA

To:

    Finch, Jason Mark
    212 South 74th Street
    Suite 100
    Omaha, NE 68114

A-Number:
240-103-057
Riders:
In Custody Redetermination Proceedings

Date:
10/08/2025

## ORDER OF THE IMMIGRATION JUDGE

The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:

☑ Denied, because
    No jurisdiction - Matter of YAJURE HURTADO, 29 I&N Dec. 216 (BIA 2025).

☐ Granted. It is ordered that Respondent be:
    ☐ released from custody on his own recognizance.
    ☐ released from custody under bond of $
    ☐ other:

☐ Other:

Immigration Judge: Morrissey, Matthew 10/08/2025

Appeal: Department of Homeland Security: ☑ waived ☐ reserved

Respondent: ☐ waived ☑ reserved

Appeal Due: 11/07/2025

## Certificate of Service

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ ] Alien c/o custodial officer | [ E ] Alien atty/rep. | [ E ] DHS

Respondent Name : GENCHI-GARCIA, ROSAURA | A-Number : 240-103-057

Riders:

Date: 10/08/2025 By: CRNKOVICH, KARA, Court Staff